IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TYLER EDMONDS AND
SHARON CLAY                                                              PLAINTIFFS

V.                                                  CIVIL ACTION NO. 1:09CV00070-B-D

OKTIBBEHA COUNTY, MISSISSIPPI                                             DEFENDANT

### **MEMORANDUM OPINION**

This cause comes before the court upon the defendant's motion for summary judgment and the plaintiffs' motion for leave to file supplemental brief. The plaintiffs' motion for leave is granted, as this court has considered said brief in ruling on the defendant's motion for summary judgment. As for the summary judgment motion, upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Tyler Edmonds, brings this suit under Title 42 U.S.C. § 1983, claiming he was wrongfully convicted of murder based on an allegedly coerced confession taken by law enforcement officers of the defendant, Oktibbeha County, Mississippi.

On May 9, 2003, Kristi Fulgham took her thirteen-year-old half-brother, plaintiff Tyler Edmonds, to the home she shared with her husband, Joey Fulgham, in rural Oktibbeha County, Mississippi. Edmonds, at Fulgham's request, brought with him a .22 caliber rifle which belonged to his step-father. At some point early the next morning, Joey Fulgham was shot in the back of the head and killed with a .22 caliber rifle while he was sleeping. Later the same morning, Fulgham, Edmonds, and two of Fulgham's minor children left the house for a weekend trip to the Gulf Coast, picking up Fulgham's boyfriend, Kyle Harvey, along the way.

Fulgham was arrested on May 12, 2003, for the murder of her husband. During her interrogation she accused Edmonds, the plaintiff herein, of the murder. A deputy then contacted Edmonds' mother, plaintiff Sharon Clay, and asked her to bring Edmonds in for questioning. When Edmonds and his mother arrived at the sheriff's department, both of them executed a waiver of their *Miranda* rights at a deputy's request. Deputies then began conducting an interrogation of Edmonds in his mother's presence. Edmonds initially denied knowledge of the murder. The deputies therefore told him that Fulgham had blamed him for the murder and showed him Fulgham's written statement containing the accusation.

At some point during the interrogation, deputies received instructions via telephone from Oktibbeha County Sheriff, Dolph Bryan, who directed them to separate Edmonds and his mother and continue questioning. Deputies then brought Fulgham into the interrogation room and instructed her to tell Edmonds what she had told them. Fulgham held Edmonds' hand and told Edmonds to "tell them." At this point Edmonds told the deputies that he and Fulgham had used the same gun at the same time to shoot Joey. Deputies then arrested Edmonds for the capital murder of Joey Fulgham and incarcerated him in the Oktibbeha County jail.

Edmonds now asserts that Fulgham had previously coached him on what to say if questioned by authorities regarding Joey Fulgham's murder and asked him to take the blame for the murder because he was a minor and would not be prosecuted, whereas she would be sentenced to death. He asserts that he changed his story because he was afraid of getting into trouble himself. He nevertheless wanted to help his sister, so he took partial blame.

Sheriff Bryan allowed Edmonds to give another video statement subsequent to his confession. In this second statement, Edmonds recanted his confession and stated that he did not

2

learn of the murder until the return trip from the Gulf Coast when Fulgham told him she had committed the murder and instructed him on how to respond to questioning by officials.

Edmonds retained counsel and filed a petition for writ of habeas corpus on May 29, 2003, requesting to be granted bail. Circuit Judge Jim Kitchens denied the request. Judge Kitchens ruled that whether Edmonds' confession was voluntarily given was not relevant to the hearing.

United States District Judge Mike Mills granted Edmonds' habeas corpus petition on March 2, 2004, and ordered that a bail hearing be held within forty-eight hours. Judge Kitchens telephoned Judge Mills' chambers immediately after the close of this hearing and, according to Judge Mills' testimony given at a deposition in this civil case, expressed his anger regarding the ruling.

Edmonds was tried as an adult in the Oktibbeha County Circuit Court. His confession was admitted at the trial, and he was convicted of murder on July 25, 2004. The Mississippi Court of Appeals subsequently affirmed. The Mississippi Supreme Court granted Edmonds' petition for writ of certiorari, and the court reversed and remanded for a new trial on May 10, 2007. *See Edmonds v. State*, 955 So. 2d 878 (Miss. 2007). The Mississippi Supreme Court found, inter alia, that the expert forensic pathologist's opinion regarding the two-shooter theory was speculative; that the trial court erred in admitting the pathologist's opinion on this matter; that the error substantially affected Edmonds' rights; and that the trial court's error in excluding Fulgham's statements against her penal interest and evidence of her tumultuous relationship with Joey Fulgham deprived Edmonds of a fair trial. *Id.* Neither the trial court, nor the Court of Appeals, nor the Mississippi Supreme Court ruled the confession coerced but admitted it for the jury to consider what weight and credibility would be assigned to it.

Judge Kitchens, *sua sponte*, recused himself from the case on May 11, 2007, and Circuit Judge Lee Howard presided over Edmonds' second trial. Prior to the trial, Judge Howard denied Edmonds' motion to suppress the original confession. The confession was, therefore, admitted into evidence at the second trial. Edmonds was nevertheless acquitted at the close of this trial on November 1, 2008. Kristi Fulgham was ultimately convicted for the murder of her husband and is currently on death row.

Edmonds and his mother, Sharon Clay, filed the present action in this court on March 20, 2009, asserting claims against Oktibbeha County pursuant to Title 42 U.S.C. § 1983 for violation of rights granted by the Fifth and Fourteenth Amendments. The plaintiffs also ask this court to find that the Mississippi Youth Court Act violates the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff Edmonds initially sought recovery against the State of Mississippi under Mississippi Senate Bill No. 3024 (now Miss. Code Ann. § 11-44-3), which became effective July 1, 2009, creating a claim for wrongful conviction in Mississippi. After the State moved to dismiss, correctly noting that proper jurisdiction for a wrongful conviction and imprisonment claim lies in the circuit court of the county in which the claimant was convicted, the State was dismissed by agreement of the parties on October 15, 2009.

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial

burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

Analysis

The parties disagree as to the application and effect of certain Fifth Circuit precedent in this case, specifically in regard to Edmonds' Fifth Amendment claim regarding the allegedly coerced confession. The defendant asserts that the case of *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005), requires dismissal of the claim because it holds that the decision of the state court trial judge to admit the confession into evidence at the trial constitutes a superseding cause that shields the defendant county from liability under Section 1983. The plaintiffs argue that *Murray* should be narrowly construed and is only applicable in the context of a qualified immunity defense. The plaintiffs urge the court to apply *United States v. Burzynski Cancer Research Institute*, 819 F.2d 1301, 1309 (5th Cir. 1987), in which, they contend, the Fifth Circuit correctly construes *Malley v. Briggs*, 475 U.S. 335, 345 n.7 (1986), as rejecting the overly broad rule that a trial court's endorsement of an unconstitutional action always breaks the chain of causation. The plaintiff's argument presumes there was an unconstitutional action on the part of the

5

defendant county's law enforcement officers in obtaining the confession. Neither the first trial court, the Court of Appeals, the Mississippi Supreme Court, nor the second trial court found the actions of the law enforcement officers to be unconstitutional, and this court agrees.

The plaintiffs further contend that even if this court is bound by *Murray*, the assumption on which *Murray* was based – that is, that the superseding action was performed by a "neutral intermediary" – is not present in this case. The plaintiffs contend that Judge Kitchens was not a "neutral intermediary," because the Mississippi Supreme Court reversed Edmonds' conviction on the ground that Edmonds did not receive a fair trial.

As noted above, Edmonds' contested confession was admitted into evidence not only by Judge Kitchens in the first trial but also by Judge Howard in the second. The plaintiffs argue that Judge Howard's order denying Edmonds' motion to suppress the confession is of no consequence because Judge Howard "believed himself bound by Judge Kitchens' fact-finding, which had been affirmed by the Mississippi Court of Appeals." There is no evidence of this assertion anywhere in the record. More specifically, Judge Howard found "that the Defendant...put forth no new issues not previously ruled upon by the Circuit Court and affirmed by an appellate court." This court finds likewise.

The only "new issue" before this court that was not before the circuit court or the two appellate courts in regard to Edmonds' contested confession is the deposition testimony of Judge Mills stating that Judge Kitchens telephoned him in an irritated, angry state of mind immediately after Judge Mills' May 2, 2004, habeas hearing. The plaintiffs contend that "[t]he very fact that Judge Kitchens . . . called a United States District Judge immediately after the District Judge overturned the state trial judge's decision 'in a very irritated, angry' state of mind is relevant."

This court disagrees. Judge Mills' testimony reveals no information regarding any alleged bias held by Judge Kitchens regarding his admission of Edmonds' confession into evidence. The testimony merely reveals that Judge Kitchens called Judge Mills in an irritated, angry state of mind. Judge Kitchens simply may have been angered that his ruling was overturned by another judge – anger that does not necessarily have any relation to the substance of either ruling. He may have been frustrated at the thought of being ordered to hold another hearing on a matter he had deemed resolved. Any conclusions drawn by the plaintiffs from Judge Mills' testimony would be mere speculation, and it is well-settled that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at the summary judgment stage of a case. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). It might be a different matter if Judge Kitchens had made specific statements revealing his personal opinion as to Edmonds' innocence or guilt or if he had expressed any other personal prejudice against Edmonds. No such statements are in the record before this court. The plaintiffs have directed the court to no evidence upon which a reasonable jury could determine that Judge Kitchens was biased against Tyler Edmonds and that he wilfully admitted an illegal confession into evidence.

Presented with no evidence of Judge Kitchens' alleged bias, the court proceeds on the assumption that the judge was a "neutral intermediary" as contemplated by the Fifth Circuit in the line of cases addressing the issue of the superseding cause defense. The court now revisits the debate regarding the application of *Murray v. Earle* to the present case. As previously noted, the plaintiffs argue that *Murray* should be narrowly construed and is only applicable within a qualified immunity context and that *Burzynski* is the controlling precedent on the superseding

7

cause issue. This court need only look to the Fifth Circuit's opinion in *Murray* for a resolution of the matter. There the court addressed an apparent conflict between *Burzynski* and a subsequent case, *Hand v. Gary*, 838 F.2d 1420, (5th Cir. 1998), a Fourth Amendment false arrest case. The court stated:

> One year after *Malley* [*v. Briggs*[1]], we implicitly endorsed this approach in *United States v. Burzynski Cancer Research Institute*, holding that *Malley* required us to reject a police officer's "superseding cause" arguments and examine only whether a reasonably well-trained officer would have known that his warrant application was unsupported by probable cause. The following year, however, we decided *Hand v. Gary*, a false arrest case in which we held that, when a neutral intermediary, such as a justice of the peace, reviews the facts and allows a case to go forward, such an act "breaks the chain of causation." We qualified our holding by stating that "the chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." This holding in *Gary* was consistent with circuit precedent, yet we made no mention of *Burzynski* or of the Supreme Court's "proximate cause" footnote in *Malley*.
>
> The rule of *Hand v. Gary* has since prevailed in this circuit for almost two decades. Even though *Burzynski* appears to contradict *Hand*'s holding on the issue of superseding cause, the earlier decision did not address the issue in depth, and we are unwilling to disregard firmly ensconced circuit precedent in favor of such a cursory analysis of *Malley*'s dicta.
>
> * * *
>
> We hold that, as in the analogous context of Fourth Amendment violations, an official who provides accurate information to a neutral intermediary, such as a trial judge, cannot "cause" a subsequent Fifth Amendment violation arising out of the neutral intermediary's decision, even if a defendant can later demonstrate that his or her statement was made involuntarily while in custody.

*Murray*, 405 F.3d at 291-93 (citations omitted). *Murray* therefore resolves the implication in *Burzynski* that a superseding cause defense is unavailable to officers in a Section 1983 case.

---

[1] 475 U.S. 335 (1986).

The plaintiffs have made no allegations, much less presented evidence, that the deputies who obtained Edmonds' confession made any misrepresentation to Judge Kitchens, omitted crucial facts, or otherwise prevented the judge from being fully advised of the circumstances surrounding Edmonds' interrogation and confession. Therefore, in accordance with *Murray*, Judge Kitchens' ruling to admit the confession into evidence constitutes a superseding cause which precludes the defendant's liability for any alleged violation of Edmonds' Fifth Amendment rights, even assuming *arguendo* that there was some unconstitutional act on the part of the defendant county's law enforcement officers, but this court finds no such unconstitutional acts.

The plaintiffs also argue that *Elkins v. United States*, 364 U.S. 206 (1960), requires this court to make an independent inquiry into whether Edmonds suffered a Fifth Amendment violation – that is, whether his confession was voluntary or coerced. Even if this were the case, the application of the superseding cause defense negates the necessity of an independent inquiry in this case. That being said, the court is unpersuaded by the plaintiffs' reliance on *Elkins*, which was a criminal case involving an alleged *Fourth* Amendment violation and a motion to suppress, as opposed to a Section 1983 case seeking monetary damages for a state actor's allegedly unconstitutional actions; nor did *Elkins* address a superseding cause defense. For these reasons, the case is distinguishable and inapplicable to the present case.

Even if the court were to conduct an independent inquiry into the voluntariness of Edmonds' confession, such review would be of little help to the plaintiffs. First, the record reveals Edmonds was properly informed of his rights. He and his mother, Sharon Clay, both signed written *Miranda* waivers, and Edmonds signed a second waiver before his videotaped

9

confession. Further, Edmonds confessed to Clay in front of the deputies when Clay returned to the interrogation room. While Edmonds apparently lied to the deputies in an effort to protect his sister, it is clear he did so voluntarily. Two circuit judges and two appellate courts have declined to find Edmonds' confession involuntary, or in plaintiff's terminology, "coerced." This court likewise finds no such involuntariness. If anyone persuaded Edmonds to give an untrue confession, it appears it was his sister. The court finds that the defendant is entitled to summary judgment on Edmonds' Fifth Amendment claim of a coerced confession.

The plaintiffs appear to have abandoned Edmonds' Fourteenth Amendment claim as they do not address it in their response to the defendant's motion for summary judgment. Such a claim would require a showing that the deputies' actions in obtaining Edmonds' confession "shock the conscience." *Chavez v. Martinez*, 538 U.S. 760, 773 (2003). Edmonds has not attempted to direct the court to evidence that the deputies' actions were shocking to the conscience, and Edmonds' Fourteenth Amendment claim should be dismissed.

The plaintiffs do pursue a Fourteenth Amendment claim on behalf of Sharon Clay. The plaintiffs cite *Troxel v. Granville*, 530 U.S. 57 (2000), in support of their position that a parent has a fundamental substantive due process right to "custody" of his or her child. In *Troxel*, a plurality of the United State Supreme Court held that a statute allowing any person to petition for child visitation rights and for those rights to be granted if found to be in the best interests of the child violated the mother's Fourteenth Amendment due process right to the "care, custody, and control of [her] children." *Id.* at 65. The plaintiffs also cite *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003), for the proposition that a parent has a right to "familial relations" under the Fourteenth Amendment. *Heck* involved an investigation instigated by child caseworkers who learned that a

private Baptist school was using corporal punishment as a form of student discipline. *Id.* at 499. The caseworkers visited the school, sought to interview students without their parents' permission, and threatened to remove the children from their parents' custody. *Id.* The *Heck* court found that a right to familial relations does exist and that the actions of the caseworkers violated that right, though the court found the caseworkers entitled to qualified immunity on the basis that a reasonable caseworker would not have known that such an investigation would violate the right. *Id.* at 525.

The plaintiffs would have this court extend the right to "custody" and the right to "familial relations" to include the parent's right to be present when a child is questioned by authorities in a capital murder investigation. Such a finding would require a substantial analytical leap which this court will not perform. The court finds the plaintiffs' argument unsupported by the authority cited and without merit.

Even if there were some merit to Clay's claim, it must nevertheless be dismissed because it was brought outside the statute of limitations. To determine the proper statute of limitations for a Section 1983 claim, the court must look to the Mississippi statute of limitations for personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261 (1985). The applicable limitations period is thus three years pursuant to Miss. Code Ann. § 15-1-49. The confession was obtained on May 12, 2003, and Clay filed her action almost six years later on March 20, 2009. Clay argues that her damages did not accrue until Edmonds was tried and acquitted for the criminal offense, but she mistakes her alleged damages for those of her son. Clay's claim, were it viable, is based on her alleged right to be present during her son's interrogation. Any resulting damages would arise from the deputies' removing her from the interrogation room on May 12, 2003, as it is the

11

interrogation itself that allegedly violated Clay's right to "custody" of Edmonds, not the outcome of the subsequent criminal trial. For these reasons, Clay's Fourteenth Amendment claim must be dismissed.

Finally, the plaintiffs ask the court to hold that the Mississippi Youth Court Act is unconstitutional because it violates the Equal Protection Clause of the Fourteenth Amendment. The Act provides that minors are entitled to have their parents present while being questioned for any crime other than a capital offense, as a capital offense divests the Youth Court of jurisdiction under the statute. Miss. Code Ann. § 43-21-151. The plaintiffs argue that the Act "infringes upon the fundamental right to be free from violation of one's Fifth Amendment right to self-incrimination." The court disagrees. The Act in no way infringes upon a minor's Fifth Amendment rights. The right against self-incrimination and the right to counsel remain in place despite the Act. The plaintiffs are essentially arguing that a minor charged with capital murder has a Fifth Amendment right to have a parent present during interrogation. The additional protections for minors guaranteed by the Youth Court Act flow from the legislature – not the United States Constitution. There is no fundamental right to the protections of the Youth Court Act. "Absent a showing of a fundamental right or membership in a suspect class, strict scrutiny [is] inappropriate, and the rational-basis standard applie[s]" to Edmonds' claim. *Handley v. Chapman*, 587 F.3d 273 (5th Cir. 2009). Edmonds carries the burden of showing that the Act would not survive rational-basis review, and he has failed to meet that burden. *Id.* (citing *Lindquist v. City of Pasadena, Texas*, 525 F.3d 383, 387 (5th Cir. 2008)). The plaintiffs' argument is without merit, and their request that this court declare the Act unconstitutional will be denied.

Conclusion

In light of the foregoing analysis, the court finds that no genuine issue of material fact exists in regard to any claim of the plaintiffs in this case, and the defendant is entitled to judgment as a matter of law. A separate judgment in accordance with this opinion shall issue this day.

This, the 30th day of November, 2010.

                                                 */s/ Neal Biggers*
                                                 **NEAL B. BIGGERS, JR.**
                                                 **SENIOR U.S. DISTRICT JUDGE**